UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————

GERARD DARREN MATTHEW, JANISE
MATTHEW, as mother and natural
guardian of infant VICTORIA                05 Civ. 8045 (JGK)
CLAUDETTE MATTHEW, HERBERT REED,
COLETTE CALLENDER, RAYMOND RAMOS,          OPINION AND ORDER
PRINCESS RAMOS, HECTOR VEGA, JR.,
LEOPOLDINA VEGA, AUGUSTIN MATOS,
JR., THERESA MATOS, ANTHONY
YONNONE, ARLENE YONNONE, JERRY
FERNANDO OJEDA, ANTHONY PHILLIP,
and YOLANDA PHILLIP,

                    Plaintiffs,

        - against -

UNITED STATES OF AMERICA and
DEPARTMENT OF THE ARMY,

                    Defendants.

———————————————————————

JOHN G. KOELTL, District Judge:

     The plaintiffs, members of the Army Reserves and members

of their families, bring this action under the Federal Tort

Claims Act, 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), and 2671-

80, alleging that the soldier-plaintiffs suffered injuries as

a result of exposure to radioactive depleted uranium ("DU")

while serving on active military duty in Iraq.

     The plaintiffs assert six claims for relief in their

Complaint.  The first claim, asserted by the soldier-

plaintiffs, alleges that those plaintiffs suffered injuries

as a result of the negligence of the Department of the Army

(the "Army"). (Compl. ¶¶ 69-86.) The second claim alleges medical malpractice by Army physicians in connection with treatment rendered prior to the soldier-plaintiffs' discharge from military service. The soldier-plaintiffs received medical treatment at medical facilities operated by the Army both overseas and in the United States. (Compl. ¶¶ 87-95.) The third claim alleges medical malpractice by Army physicians in connection with treatment rendered after the soldier-plaintiffs' discharge from military service. (Compl. ¶¶ 96-102.) The fourth claim alleges that the plaintiff Victoria Claudette Matthew, the daughter of plaintiffs Gerard Darren Matthew and Janise Matthew, was born on June 28, 2004 with "serious and permanent physical and psychological injuries" resulting from negligent exposure to DU upon conception and thereafter. (Compl. ¶¶ 103-07.) The fifth claim alleges that, as a result of the defendants' negligence, the plaintiff Janise Matthew has been deprived of the services and companionship of her daughter Victoria Claudette Matthew and has incurred medical expenses relating to Victoria Matthew's exposure to DU. (Compl. ¶¶ 108-11.) The sixth claim alleges that the spouse of each of the soldier-plaintiffs except Jerry Fernando Ojeda has been deprived of the services, society, and companionship of her

spouse as a result of the soldier-plaintiffs' exposure to DU. (Compl. ¶¶ 112-26.)

The defendants, the United States of America and the Department of the Army, move pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss the Complaint on the ground that the Court lacks subject matter jurisdiction over each of the plaintiffs' claims under the doctrine of Feres v. United States, 340 U.S. 135 (1950), or under 28 U.S.C. §§ 2680(j) and 2680(k).  In the alternative, the Government moves for dismissal of the plaintiffs' medical malpractice claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  For the reasons explained below, the defendants' motion is **granted in part and denied in part**.

**I.**

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court must accept the factual allegations contained in the complaint as true.  See Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).  The Court is not limited to considering the complaint alone, however, but may also consider matters outside the

pleadings such as affidavits, documents, and testimony.  See
Phifer v. City of New York, 289 F.3d 49, 55 (2d Cir. 2002);
Antares Aircraft v. Fed. Republic of Nigeria, 948 F.2d 90, 96
(2d Cir. 1991), aff'd on remand, 999 F.2d 33 (2d Cir. 1993);
Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir.
1986); John Street Leasehold, LLC v. Capital Mgmt. Res.,
L.P., 154 F. Supp. 2d 527, 533-34 (S.D.N.Y. 2001), aff'd, 283
F.3d 73 (2d Cir. 2002).  The standard used to evaluate a Rule
12(b)(1) motion is thus similar to that used for summary
judgment under Rule 56.  See Kamen, 791 F.2d at 1011.

     The plaintiffs have the ultimate burden of proving the
Court's jurisdiction by a preponderance of the evidence.  See
Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996); Beacon
Enters., Inc. v. Menzies, 715 F.2d 757, 762 (2d Cir. 1983);
Fier v. United States, No. 01 Civ. 2225, 2002 WL 453177, at
*1 (S.D.N.Y. Mar 25, 2002), aff'd, 53 Fed. Appx. 158 (2d Cir.
2002);  see also Kehr Packages, Inc. v. Fidelcor, Inc., 926
F.2d 1406, 1409 (3d Cir. 1991) (when subject matter
jurisdiction is challenged under Rule 12, plaintiff bears the
burden of persuasion); Martin v. Reno, No. 96 Civ. 7646, 1999
WL 527932 (S.D.N.Y. July 22, 1999); Harp v. City of New York,
218 F. Supp. 2d 495, 496-97 (S.D.N.Y. 2002).

## II.

It is beyond dispute that sovereign immunity deprives a federal court of jurisdiction over claims against the United States Government except to the extent that sovereign immunity has been waived.  See United States v. Mitchell, 463 U.S. 206, 212 (1983).  While the Government has, through the Federal Tort Claims Act, waived its sovereign immunity for a significant number of claims, that waiver is not absolute and federal courts are without jurisdiction to hear claims for which the Government has not consented to suit.

In one of the earliest decisions interpreting the Federal Tort Claims Act, the Supreme Court held that active service members may assert claims against the Government for injuries unrelated to their military service.  Brooks v. United States, 337 U.S. 49, 51-52 (1949).  The Court therefore allowed a suit to proceed on behalf of a soldier and the estate of his brother, also a soldier, arising out of a collision between their vehicle and a vehicle driven by an Army employee.  Id. at 50, 53.  In so holding, the Court noted that the injuries were not incident to the soldiers' service.  Id. at 50, 52.

Just one year later, however, the Supreme Court unanimously held in Feres v. United States, 340 U.S. 135 (1950), that "the Government is not liable under the Federal

Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." Feres, 340 U.S. at 146.  The Feres doctrine has been reaffirmed on numerous occasions.  See, e.g., United States v. Johnson, 481 U.S. 681, 686-88 (1987).

The Court of Appeals for the Second Circuit, like a number of other courts of appeals, has held that the Feres doctrine fully applies to members of the military reserves. Wake v. United States, 89 F.3d 53, 58-59 (2d Cir. 1996); see also Quintana v. United States, 997 F.2d 711, 712 (10th Cir. 1993); Duffy v. United States, 966 F.2d 307, 312 (7th Cir. 1992); Estate of Martinelli v. United States Dep't of the Army, 812 F.2d 872, 873 (3d Cir. 1987).  To the extent that the injuries asserted in the plaintiffs' Complaint arise out of their military service, or are in the course of activity incident to their military service, therefore, the Court is without jurisdiction to hear those claims.

The Court of Appeals has identified a number of factors for courts to consider in determining whether an injury is "incident to service," including (1) "the individual's status as a member of the military at the time of the incident giving rise to the claim," (2) "the relationship of the activity to the individual's membership in the service, as well as the location of the conduct giving rise to the

underlying tort claim," and (3) "whether the activity is limited to military personnel and whether the service member was taking advantage of a privilege or enjoying a benefit conferred as a result of military service."  Wake, 89 F.3d at 58.  No single factor is dispositive.  Id.

The Court of Appeals has noted that there are three underlying rationales for the Feres doctrine:  "(1) the distinctly federal relationship between the Government and members of its armed forces; (2) the existence of a uniform system of generous statutory disability and death benefits for members of the military; and (3) the need to preserve the military disciplinary structure and prevent judicial involvement in sensitive military matters."  Id. at 57 (internal quotation marks omitted).  These considerations should permeate the process of determining whether a service member's claim occurred within the purview of a distinctly military sphere of activity or while a military relationship was in effect.  Id. at 57–58.

Each of the plaintiffs' claims will be addressed in turn with respect to these factors.

**A.**

Application of the Wake factors to the first claim, the claim by the soldier-plaintiffs for negligent exposure to DU, compels the conclusion that the injuries alleged were

7

incident to those plaintiffs' military service and are thus
barred by the Feres doctrine.  The Complaint alleges that all
of the soldier-plaintiffs were performing active military
duty in Iraq at the time of their exposure to DU.  (Compl. ¶¶
18-41.)  Their active duty status, and the fact that they
were exposed to DU while on active military duty in a foreign
nation where United States troops were, and are, engaged in
military operations, establish that their injuries were
incident to their military service.

     Although the plaintiffs allege, in their Complaint and
in their brief in opposition to this motion, that the
soldier-plaintiffs were engaged in "[b]asic human functions
such as breathing and eating [that] are necessary to sustain
human life by all human beings throughout the world" (Compl.
¶ 43), it is clear that the inquiry under the Feres doctrine
is not whether the injuries complained of could only arise
incident to military service, but rather whether they did in
fact arise incident to military service.

     Indeed, the Court of Appeals found the doctrine
applicable in Wake, where a member of the Navy ROTC, who was
also an inactive member of the Navy Reserves, was injured in
a motor vehicle accident.  Wake, 89 F.3d at 55-56, 62.
Unlike the soldier-plaintiffs in this case, the plaintiff in
Wake "lacked an official military status" and was on a public

interstate highway in the United States at the time of her
accident.  Id. at 56, 58.  Nevertheless, the Court of Appeals
concluded that the injuries fell within the Feres bar because
the plaintiff was traveling from a physical examination at a
Navy facility in a Navy-owned vehicle driven by a Navy
officer, and thus "was a passenger in the vehicle in her
military, rather than civilian, capacity."  Id. at 60.

     Other cases have similarly applied Feres broadly to
injuries sustained by service members incident to their
military service.  In Sanchez v. United States, 878 F.2d 633,
634, 637 (2d Cir. 1989), Feres was held to bar a claim
against the United States for alleged negligent repair of a
service member's vehicle that caused injuries to another
service member in an accident on a public highway while the
service members were "on liberty."  In Bozeman v. United
States, 780 F.2d 198 (2d Cir. 1985), the widow of a service
member killed in an automobile accident off base filed suit
against the United States alleging that the NCO club where
her husband had been drinking had breached its duty to
discontinue serving him drinks when it was clear he was
already intoxicated.  The court held that Feres barred the
claim because the alleged negligence took place at the NCO
club, which the plaintiff's husband was only entitled to use
as a result of his military status.  Id. at 201.

In none of these cases did the plaintiffs allege injuries relating to actual combat, or that could only have arisen in the context of military hostilities.  It is clear that the injuries alleged by the soldier-plaintiffs in this case have a much closer relationship to their active military service than did the injuries alleged in the cases cited above in which Feres was held to apply.  The plaintiffs' allegations in their first claim for relief unavoidably implicate "civilian court scrutiny of military discipline and policies" of the very type the Feres doctrine is intended to avoid.  Wake, 89 F.3d at 62.  The Court therefore concludes that the first claim for relief is barred by the Feres doctrine.

## B.

## 1.

The second claim for relief, for alleged medical malpractice in military facilities both overseas and in the United States prior to the soldier-plaintiffs' discharge from the military, is likewise barred by Feres.  Numerous courts of appeals have held that claims alleging medical malpractice by military physicians in military facilities are barred by Feres where the plaintiff was an active member of the military at the time of the alleged malpractice.  See, e.g., Jones v. United States, 112 F.3d 299, 302 (7th Cir. 1997);

Jackson v. United States, 110 F.3d 1484, 1489 (9th Cir. 1997); Cutshall v. United States, 75 F.3d 426, 428 (8th Cir. 1996); Hayes v. United States, 44 F.3d 377, 378-79 (5th Cir. 1995); Quintana, 997 F.2d at 712; Persons v. United States, 925 F.2d 292, 295-96 (9th Cir. 1991).  Indeed, each of the two companion cases decided with Feres itself involved allegations of medical malpractice, and the Supreme Court noted that the common bond between the three was that "each claimant, while on active duty and not on furlough, sustained injury due to negligence of others in the armed forces." Feres, 340 U.S. at 138.  It is therefore clear that the Feres doctrine precludes claims under the FTCA for medical malpractice committed while the soldier-plaintiffs were still active members of the armed forces.

## 2.

The third claim for relief, alleging medical malpractice after the soldier-plaintiffs were discharged from military service, presents a somewhat different situation.  In United States v. Brown, 348 U.S. 110 (1954), the Supreme Court held that Feres did not bar a claim brought by a former soldier for medical malpractice alleged to have occurred after his discharge.  In Brown, the plaintiff had been injured while on active duty and honorably discharged from the military in 1944 as a result of the injury.  Doctors at the Veterans

11

Administration had operated on his knee in 1950, and then
again in 1951 because the first operation had not been
entirely successful.  During the second operation, the
physicians allegedly used a defective tourniquet, resulting
in serious permanent injury to the plaintiff.  Brown, 348
U.S. at 110-11.  The Supreme Court noted that Feres did not
overrule Brooks v. United States, but rather created a
dichotomy under which FTCA claims could not be brought for
injuries arising out of or in the course of activity incident
to military service, but could be brought for injuries that
did not so arise.  Id. at 112.  The Court held that the
injury in Brown was governed by Brooks rather than by Feres,
reasoning that the injury alleged was medical malpractice
taking place after the plaintiff's discharge from the
military, which was not incurred while the plaintiff was on
active duty or subject to military discipline.  Id. at 112.
The facts that the original injury occurred while the
plaintiff was in the service and that he was able to receive
treatment in a Veterans Administration Hospital because of
his prior service were insufficient to bring the case within
the bar of Feres.  Id.

As the Supreme Court did in Brown, the Court of Appeals
for the Second Circuit has more recently reaffirmed that the
distinction between claims governed by Brooks and those

12

governed by <u>Feres</u> retains its force.  <u>Taber v. Maine</u>, 67 F.3d 1029, 1039-40 (2d Cir. 1995).

The claim of medical malpractice includes two parts. First, the plaintiffs allege that the defendants failed to inform each plaintiff of the true nature and consequences of exposure to DU and failed to inform each plaintiff about and concealed from each plaintiff the true nature of his condition, symptoms, and injuries.  (Compl. ¶¶ 97-99.) Second, the plaintiffs allege that during medical treatment the defendants failed to diagnose properly the plaintiffs' conditions, failed to render appropriate medical treatment, and negligently departed from accepted medical practices in the care and treatment of each plaintiff.  (Compl. ¶¶ 100-102.)

A number of courts have held with respect to similar claims that the "duty to warn 'arises only at the time when the Government first knew or should have known of the hazardous condition, and any breach of that duty begins and ends at that time.'"  <u>Maddick v. United States</u>, 978 F.2d 614, 616 (10th Cir. 1992) (quoting <u>Heilman v. United States</u>, 731 F.2d 1104, 1107 (3d Cir. 1984)); <u>see also</u> <u>Lombard v. United States</u>, 690 F.2d 215, 220-23 (D.C. Cir. 1982); <u>Henning v. United States</u>, 446 F.2d 774, 777-78 (3d Cir. 1971).  These courts have thus concluded that the failure to warn is a

continuing tort and where it begins prior to discharge it is barred by <u>Feres</u> because <u>Brown</u> applies only to alleged injuries that occur entirely post-discharge.  <u>Maddick</u>, 978 F.2d at 616.

The cases upon which the plaintiffs rely are not to the contrary.  Both <u>Broudy v. United States</u>, 661 F.2d 125 (9th Cir. 1981), and <u>Thornwell v. United States</u>, 471 F. Supp. 344 (D.D.C. 1979), which found an actionable independent tort for malpractice allegedly committed after discharge, followed this rule.  In <u>Broudy</u>, the Court of Appeals for the Ninth Circuit reversed the district court's dismissal of an FTCA claim based upon an alleged failure to warn but based its decision on the fact that the complaint was unclear as to whether the post-discharge negligence alleged was an independent tort or a continuing tort.  <u>Broudy</u>, 661 F.2d at 128-29.  The court noted:

> [I]f the Appellant can allege and prove <u>an independent, post-service negligent act on the part of the Government</u>, her claim would be cognizable under the FTCA.  The Government's failure to warn Major Broudy of and monitor any possible injuries arising from his exposure to radiation might constitute such an act <u>if the Government learned of the danger after Major Broudy left the service</u>.[1]

<u>Id.</u> (emphasis added).

---

[1]   In <u>Monaco v. United States</u>, 661 F.2d 129 (9th Cir. 1981), decided the same day as <u>Broudy</u>, the Court of Appeals for the Ninth Circuit squarely held that <u>Brown</u> could not be "extended to include post-service injury resulting from in-service negligence."  <u>Id.</u> at 133.

Likewise, Thornwell noted that the plaintiff had alleged two entirely separate torts, an intentional tort prior to discharge and negligence after discharge, and that the negligence claim could proceed because the tort was alleged to have occurred entirely after discharge.  Thornwell, 471 F. Supp. at 351; accord Everett v. United States, 492 F. Supp. 318, 325-26 & n.6 (D. Ohio 1980) (allowing an FTCA claim for a separate tort alleged to have taken place wholly after discharge).  The Thornwell court specifically noted that "it is clear, at the very least, that a mere act of negligence which takes place while the plaintiff is on active duty and which then remains uncorrected after discharge, is not grounds for suit."  Thornwell, 471 F. Supp. at 351.

The Complaint in this case plainly alleges the same continuing concealment and failures to warn both pre- and post-discharge.  (See Compl. ¶¶ 90-92, 97-99.)  The Complaint also alleges that the Government was aware, or should have been aware, of the risks posed by DU and its likely presence where the soldier-plaintiffs would be stationed, prior to the soldier-plaintiffs' arrival in Iraq and thus prior to their discharge.  (See Compl. ¶¶ 44-45, 53-67.)  Those allegations are therefore barred by Feres.  See Maddick, 978 F.2d at 616.

The Complaint also alleges, however, that military doctors "failed to render appropriate medical treatment" for

15

the plaintiffs' conditions, and "negligently departed from accepted medical practices" in caring for them. (Compl. ¶¶ 101-102.)  Unlike the duty to warn, which is breached at the time the defendant knew or should have known of the risk and failed to warn the plaintiffs of that risk, this alleged medical malpractice is not a continuing tort but rather a series of separate acts or omissions taking place wholly after the soldier-plaintiffs' respective discharges from service.  Such alleged malpractice is, under the Supreme Court's decision in Brown, "not incident to the military service," and it presents a cognizable claim under the FTCA. Brown, 348 U.S. at 113. The Court will therefore dismiss the third claim for relief except to the extent that it alleges failure to treat and failure to adhere to accepted medical practices after the soldier-plaintiffs were discharged from military service.[2]

### C.

The fourth, fifth, and sixth claims for relief, asserted by Victoria Matthew and by the spouses of the soldier-plaintiffs, are barred by the Feres doctrine to the extent

---

[2]    Similarly, the plaintiffs' allegation that the defendants negligently failed to diagnose properly the symptoms and injuries caused by each plaintiff's exposure to DU cannot be dismissed at this stage of the case. The failure to diagnose is directly related to the alleged failure to render appropriate medical treatment and the negligent departure from accepted medical practices that occurred after discharge.  (Compl. ¶¶ 100-102.)

that they are based on injuries for which the soldier-
plaintiffs could not recover under Feres.  The Supreme Court
noted in Stencel Aero Engineering Corp. v. United States, 431
U.S. 666 (1977), that

> where the case concerns an injury sustained by a
> soldier while on duty, the effect of the action
> upon military discipline is identical whether the
> suit is brought by the soldier directly or by a
> third party.  The litigation would take virtually
> the identical form in either case, and at issue
> would be the degree of fault, if any, on the part
> of the Government's agents and the effect upon
> the serviceman's safety.  The trial would, in
> either case, involve second-guessing military
> orders, and would often require members of the
> Armed Services to testify in court as to each
> other's decisions and actions.

Stencel, 431 U.S. at 673.  The Court therefore held a third-
party indemnity action "unavailable for essentially the same
reasons that the direct action by [the soldier] is barred by
Feres."  Id.

Numerous courts have applied Feres and Stencel to
preclude suits by third parties for injuries that have their
genesis in injuries incurred by service members incident to
their service.[3]  The Court of Appeals for the Second Circuit
held in In re Agent Orange Product Liability Litigation, 818
F.2d 201 (2d Cir. 1987), that Feres bars "a suit for damages
occasioned by activities that are not meaningfully separable

---

[3]  This rule applies regardless of whether, as a matter of state law, the
claim is considered "derivative" of a claim that could be brought by the
soldier personally or independent of such a claim.  See In re Agent Orange
Prod. Liab. Litig., 818 F.2d 201, 202-03 (2d Cir. 1987).

17

from a protected discretionary function" of the military.  Id.
at 204 (quoting Gray v. Bell, 712 F.2d 490, 516 (D.C. Cir.
1983)).  The relevant inquiry is not, therefore, who is
injured and when the injury becomes manifest, but rather the
time and nature of the negligent act alleged.  Monaco v.
United States, 661 F.2d 129, 133 (9th Cir. 1981); see also
Agent Orange, 818 F.2d at 202 (noting that, where the decision
challenged is "military, political and discretionary, it is
imperative that a court look primarily to the cause of injury
rather than to the character of a claimant" (internal
quotation marks omitted)).

1.

It is clear that the fourth claim, in which Victoria
Claudette Matthew alleges that she has suffered injuries as a
result of exposure to DU "on conception and thereafter," has
its genesis in the alleged injury to her father, Gerard Darren
Matthew.  (Compl. ¶¶ 103-07.)  A similar case was presented in
Monaco v. United States, in which the Court of Appeals for the
Ninth Circuit held that a claim by the child of a solider who
had been exposed to radiation during his military service was
barred by Feres.  Monaco, 661 F.2d at 133.  The complaint in
Monaco alleged that the child's birth defect had been caused
by her father's exposure to radiation.  Id.  The court
reasoned that, while the complaint alleged a separate injury

to the soldier's child, and that injury manifested itself after her father's discharge, this injury was alleged to have been caused by the military's negligence while her father was on active duty and thus implicated the type of inquiry into military decisionmaking precluded by Stencel.[4] Id. at 133-34; see also Minns v. United States, 155 F.3d 445, 450 (4th Cir. 1998) (affirming dismissal of claims by soldiers' children for birth defects because the "servicemen's exposure to the chemicals is the genesis of the plaintiffs' alleged contact with the chemicals"); Grosinksy v. United States, 947 F.2d 417, 418 (9th Cir. 1991) (noting that Feres "bars suits by third parties that have their genesis in injuries to members of the armed forces"); Mondelli v. United States, 711 F.2d 567, 569-70 (3d Cir. 1983) (affirming dismissal under Feres of claims by a child alleging injuries caused by her father's exposure to radiation while in the military); Lombard v. United States, 690 F.2d 215, 223 (D.C. Cir. 1982) ("It is well established that Feres bars recovery by family members where the cause of action is ancillary or derivative to the serviceman's action for his own injury received incident to

---

[4]   Indeed, the soldier's own claim in Monaco was also held barred by Feres for the same reason:  Although he did not become aware of his cancer until 1971, well after his discharge, the relevant tortious activity was alleged to have taken place between 1943 and 1946, during his military service.  Monaco, 661 F.2d at 130, 132-33.

military service.").[5]  The fourth claim is therefore barred by
Feres.

**2.**

The fifth claim for relief alleges that Janise Matthew
has suffered injuries as a result of her daughter's exposure
to DU.  (Compl. ¶¶ 108-11.)  This claim, like Victoria
Matthew's claim for relief, has its genesis in Gerald
Matthew's alleged exposure to DU while on active military duty
and is therefore barred for the same reasons.

**3.**

The sixth claim for relief alleges that the spouses of
the soldier-plaintiffs lost their "services, society, and
companionship" as a result of the defendants' negligence.

---

[5]   The plaintiffs provide no authority to the contrary, but rather rely
on the dissent of then-Judge Ginsburg in Lombard v. United States and the
opinion in Mondelli v. United States, in which the panel expressed
misgivings about the result it reached.  (Pls.' Mem. in Opp'n to Def.'s
Mot. to Dismiss, at 20-21.)  In each of those cases, however, the court
held that the claim was barred by Feres.  In Mondelli, for example, the
Court of Appeals concluded:  "[T]he Supreme Court has construed the FTCA
to subordinate the interests of children of service personnel to the
exigencies of military discipline.  Although these are delicate policy
judgments, they are in the final analysis committed to Congress.
Consequently, we conclude, with reluctance, that the claims of Rosemarie
Mondelli are barred."  Mondelli, 711 F.3d at 570.
   A divided panel of the Court of Appeals for the Sixth Circuit recently
held that the husband and child of a mother who had allegedly been
provided with negligent pre-natal care while she was in the Navy could sue
for injuries to the child.  Brown v. United States, No. 04-5171, 2006 WL
2571119 (6th Cir. Sept. 8, 2006).  In that case, however, the court noted
that the allegedly inadequate treatment produced no injury whatever to the
service member and harmed only the child.  The Court of Appeals held that
the Federal Tort Claims Act did not bar recovery for negligent prenatal
injuries to the child of a military service person that are independent of
any injury to the child's parent.  In this case, however, the injuries to
the child are dependent on the alleged injuries to the service member
because they depend on the exposure of the service member to DU.

(Compl. ¶¶ 112-26.)   To the extent that the spouses' claims are based on the claims of the soldier-plaintiffs that are barred by Feres, the claims of the spouses are also barred because the claims of the spouses have their genesis in the soldiers' alleged exposure to DU while serving in the military in Iraq.   In Agent Orange, the Court of Appeals cited with approval the decision in Harrison v. United States, 479 F. Supp. 529, 535 (D. Conn. 1979), aff'd, 622 F.2d 573 (2d Cir. 1980), which held that under the FTCA a soldier's spouse could not recover for an injury, based on "the same set of facts," for which the soldier could not personally recover.   Agent Orange, 818 F.2d at 203.   A number of other courts have explicitly held that suits for loss of consortium are barred by the Feres doctrine.   See, e.g., Schoemer v. United States, 59 F.3d 26, 28, 30 & n.5 (5th Cir. 1995) (affirming dismissal of claims for loss of "income, support, and consortium" by a injured service member's wife); Persons, 925 F.2d at 297 (affirming dismissal of a loss of consortium claim under Feres and noting the near-unanimous view among the circuits that "derivative" claims are barred by Feres); Kendrick v. United States, 877 F.2d 1201, 1206-07 (4th Cir. 1989) (holding that claims such as loss of consortium that are "derivative" of the service member's own claims are barred by Feres).   In view of this overwhelming precedent and the position taken by the

21

Court of Appeals for the Second Circuit in Agent Orange, the
Court is bound to conclude that the sixth claim for relief is
precluded by the Feres doctrine to the extent that the spouses
attempt to recover for damages that are based on the claims of
the soldier-plaintiffs that are barred by Feres.  Hence, the
sole claim of the spouses that survives is their claim for
damages as a result of injuries to the soldier-plaintiffs from
so much of the medical malpractice claim alleged in the third
claim that has not been dismissed under Feres.


### III.

The Government also argues that the specific statutory
exclusions in 28 U.S.C. §§ 2680(j) and 2680(k) bar the
plaintiffs' claims.

### A.

Section 2680(j) excludes from the Government's waiver of
sovereign immunity "[a]ny claim arising out of the combatant
activities of the military or naval forces, or the Coast
Guard, during time of war."  28 U.S.C. § 2680(j).  Both
parties' briefs cite the decision of the Court of Appeals for
the Ninth Circuit in Johnson v. United States for the
proposition that Section 2680(j) bars suit for injuries from
physical violence relating to actual hostilities or
"activities both necessary to and in direct connection with

actual hostilities." <u>Johnson v. United States</u>, 170 F.2d 767, 770 (9th Cir. 1948).  The Government argues that the claims all arise from the soldier-plaintiffs' combatant activities during the Iraq war, and that Section 2680(j) applies even where there is no formal declaration of war.  (Def.'s Mem. in Supp. of Mot. to Dismiss, at 19-20.)  The plaintiffs counter that their injuries were not incident to "combatant activities," which they assert had ceased in Iraq prior to their injuries.  (Pls.' Mem. in Opp'n to Def.'s Mot. to Dismiss, at 8-13.)

The statutory exemption in 28 U.S.C. § 2680(j) applies to a much narrower set of circumstances than the <u>Feres</u> doctrine, which rests upon a conclusion that the waiver of sovereign immunity in 28 U.S.C. § 1346 was not intended to apply to claims by service members for injuries incident to their service.  Because the Court concludes that most of the plaintiffs' claims are precluded by the <u>Feres</u> doctrine, the Court need not resolve whether any of the claims so precluded are independently barred by 28 U.S.C. § 2680(j).  The claims that are not precluded under <u>Feres</u>, namely those for alleged failure properly to treat and to follow accepted medical practices with respect to the soldier-plaintiffs' treatment after their discharge, do not arise out of actual hostilities or activities necessary to such hostilities, but rather arise

23

out of medical treatment provided at army facilities after
the soldier-plaintiffs were discharged.  Those claims are
therefore not barred by 28 U.S.C. § 2680(j).

### B.

Section 2680(k) excludes from the Government's waiver of
sovereign immunity "[a]ny claim arising in a foreign
country."  28 U.S.C. § 2680(k).  The Government argues that,
with the exception of claims relating to medical treatment
provided at military facilities in the United States, the
plaintiffs' claims are precluded by this provision.  As with
the Government's argument under 28 U.S.C. § 2680(j), the
Court need not reach whether those claims barred by Feres are
also barred under 28 U.S.C. § 2680(k).

At the argument on the current motion, the counsel for
the plaintiffs made it clear that the medical malpractice
alleged in the third claim which relates to post-discharge
malpractice is alleged to have occurred in the United States.
(See also Pls.' Mem. at 10 ("[A]ll post-discharge malpractice
claims are alleged to have occurred in the United States.").)
As the Government concedes, 28 U.S.C. § 2680(k) is not a bar
to a claim for negligent medical treatment that took place in
the United States.[6]

---

[6]   Any medical malpractice that allegedly occurred in a foreign country
would be barred by 28 U.S.C. § 2680(k).

## IV.

The Government also moves, in the alternative, to dismiss the plaintiffs' medical malpractice claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  On such a motion, the allegations in the complaint are accepted as true.  See Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998).  In deciding a motion to dismiss for failure to state a claim, all reasonable inferences must be drawn in the plaintiff's favor.  See Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995); Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  Therefore, the defendants' motion should only be granted if it appears that the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief.  See Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002); see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Grandon, 147 F.3d at 188; Goldman, 754 F.2d at 1065; Burrell v. State Farm & Cas. Co., 226 F. Supp. 2d 427, 434 (S.D.N.Y. 2002).

As explained above, the plaintiffs' medical malpractice claims based on a duty to warn the plaintiffs of the risks associated with DU exposure are barred by <u>Feres</u>. The Government does not dispute that failure to treat and failure to adhere to commonly accepted medical practices constitute claims upon which relief can be granted, but rather asserts that these claims must be dismissed because the Complaint fails to identify with sufficient specificity the dates on which the allegedly negligent treatment was rendered and by which doctors. (Def.'s Mem. in Supp. of Mot. to Dismiss, at 22-24.)

In <u>Swierkiewicz v. Sorema, N.A.</u>, 534 U.S. 506 (2002), the Supreme Court reaffirmed that "a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" <u>Swierkiewicz</u>, 534 U.S. at 512 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). While the Government contends that the Complaint fails to provide the Government with a fair understanding of the claims asserted, the Court does not agree. The plaintiffs' medical malpractice claim is not governed by Rule 9(b), which requires that allegations of fraud or mistake be pleaded with specificity. <u>See</u> Fed. R. Civ. P. 9(b). Rather,

the plaintiffs' medical malpractice claims are only subject to
the general requirements of Rule 8(a).  See Long v. Adams, 411
F. Supp. 2d 701, 706 (E.D. Mich. 2006).  The Complaint alleges
that, after discharge, military physicians "failed to render
appropriate medical treatment" and "negligently departed from
accepted medical practices in [their] care and treatment of
each plaintiff."  (Compl. ¶¶ 101-02.)  The Complaint also
identifies a non-exclusive list of the medical facilities in
which the plaintiffs were treated and specifies a date range
between April 2003 and the time of the Complaint.  (Compl. ¶
88.)  These allegations provide the Government with sufficient
notice of the claims, especially where records of the
plaintiffs' treatment in the identified military facilities
should be in the Government's possession.  Rule 8(a) requires
no more; rather, its "simplified notice pleading standard
relies on liberal discovery rules and summary judgment motions
to define disputed facts and issues and to dispose of
unmeritorious claims."  Swierkiewicz, 534 U.S. at 512.  The
Court also noted that, "If a pleading fails to specify the
allegations in a manner that provides sufficient notice, a
defendant can move for a more definite statement under Rule
12(e) before responding."  Id. at 514.

Nor does the Complaint violate Rule 9(f) of the Federal
Rules of Civil Procedure, which provides that "[f]or the

27

purposes of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments of material matter." Fed. R. Civ. P. 9(f). "Rule 9(f) does not require the pleader to set out specific allegations of time and place; it merely states the significance of these allegations when they are actually interposed." Rosen ex rel. Egghead.com v. Brookhaven Capital Mgmt. Co., 179 F. Supp. 2d 330, 334 (S.D.N.Y. 2002) (internal quotation marks omitted). By its plain text, Rule 9(f) permits consideration of allegations of time and place when the sufficiency of the complaint is challenged, and has thus been used primarily as a screening device permitting dismissal under Rule 12(b)(6) where the averments in the complaint make clear that the claim is time-barred, an affirmative defense that must normally be raised in an answer under Rule 8(c). See id.; see also Hoover v. Langston Equip. Assocs., Inc., 958 F.2d 742, 744 (6th Cir. 1992). The Government does not suggest that the time frame alleged in the Complaint establishes that any statute of limitations has expired, and the Court notes that the Government may move under Rule 12(e) for a more definite statement if it is unable to frame a responsive pleading. Rule 9(f), however, does not provide a basis for dismissing the claims.

**CONCLUSION**

For the reasons explained above, the Government's motion to dismiss for lack of subject matter jurisdiction is **denied** with respect to the plaintiffs' claims, in their third claim for relief, that military physicians failed properly to treat them and negligently departed from accepted medical practices to the extent that the tortious conduct alleged occurred in the United States.  The motion to dismiss is also **denied** with respect to so much of the sixth claim as alleges damages to the spouses of the soldier-plaintiffs based on the injuries to the soldier-plaintiffs alleged in the residue of the third claim that has not been dismissed.  The Government's motion to dismiss as to all other claims is **granted**.  The Government's motion to dismiss for failure to state a claim upon which relief can be granted is **denied**.

**SO ORDERED.**

**Dated:     New York, New York**
**September 26, 2006**

John G. Koeltl
United States District Judge

29